**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| **STEUBEN FOODS, INC.,** | **REPORT AND RECOMMENDATION REGARDING CONSTRUCTION OF CLAIM LANGUAGE "A RATE GREATER THAN 100 BOTTLES PER MINUTE"** |
| **Plaintiff,** | |
| **v.** | |
| **OYSTAR GROUP ET AL.,** | **1:10-cv-00780-EAW-JJM** |
| | **1:12-cv-00904-EAW-JJM** |
| **Defendants.** | **1:13-cv-00892-EAW-JJM** |
| | **1:13-cv-01118-EAW-JJM** |

_____

Familiarity with the background of these patent infringement actions (and with the court's abbreviation of party names) is presumed. "The inventions described in Steuben's patents-in-suit provide an aseptic packaging system for processing bottles at a high output processing speed, and which can meet the stringent United States FDA [Food and Drug Administration] aseptic standards." Steuben's Opening Markman Submission [417], p. 5.[1]

Presented for construction is the phrase "a rate greater than 100 bottles per minute", as used in claims 1 and 18-20 of U.S. Patent No. 6,945,013 [1-1] ("aseptically disinfecting the bottles at a rate greater than 100 bottles per minute") and claims 19 and 40 of U.S. Patent No. 6,536,188 [426-3] ("filling the aseptically disinfected plurality of bottles at a rate greater than 100 bottles per minute"). "The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed . . . . When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute." O2 Micro International Ltd. v. Beyond Innovation Technology Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008).

---

[1]   Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). Unless otherwise indicated, bracketed references are to CM/ECF docket entries in 12-cv-904. Many of the documents referred to in this opinion have been filed in all of the Steuben cases, under different docket numbers.

"The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art in question at the time of the invention when read in the context of the specification and prosecution history." Laryngeal Mask Co. v. Ambu, 618 F.3d 1367, 1370 (Fed. Cir. 2010). Steuben argues that the phrase at issue "need[s] no construction" (Steuben's Opening Markman Submission [417], p. 61), reasoning that "'the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words' . . . . Such is the case here". Id., p. 62 (quoting Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005)).

On the other hand, defendants GEA, Nestlé and Jasper argue that the phrase should be construed to have "no upper limit", and defendants Shibuya and HP Hood suggest that the phrase should be construed to mean "at a rate ranging from 100 bottles to infinite bottles per minute". Joint Claim Construction and Prehearing Statement [400], p. 8.[2]

## DISCUSSION

"The Patent Act requires that a patent specification conclude with one or more claims *particularly pointing out and distinctly claiming* the subject matter which the applicant regards as the invention." Nautilus, Inc. v. Biosig Instruments, Inc., 572 U.S. 898, 901 (2014) (emphasis in original). The patent must "inform, with reasonable certainty, those skilled in the art about the scope of the invention". Id. While "[s]ome modicum of uncertainty" is to be

---

[2]     Although Steuben's action against Shibuya and Hood was transferred to the District of Delaware on November 22, 2019 (10-cv-781 [481]), their Markman submission and Steuben's response were both submitted to this court long before that transfer. 10-cv-781 [318, 333].

expected on "account [of] the inherent limitations of language" (id. at 909), the language chosen "must be precise enough to afford clear notice of what is claimed". Id.

"[W]e look to the words of the claims themselves to define the scope of the patented invention." Phillips, 415 F.3d at 1312. Steuben argues that "[t]he claim term 'a rate greater than 100 bottles per minute' means exactly what it says - the filling or disinfecting the bottles occurs at a rate greater than 100 bottles per minute", and that "those skilled in the art would read this claim term according to its ordinary meaning - and readily understand its meaning." Steuben's Markman Brief in Reply (10-cv-781 [333]), p. 19. While it is undisputed that the claim language at issue does not express an upper rate limit, Steuben suggests that "open-ended claims are not inherently improper . . . . They may be supported if there is an inherent, albeit not precisely known, upper limit and the specification enables one of skill in the art to approach that limit". January 29, 2020 conference [591], p. 18.

In support of that proposition, Steuben quotes Andersen Corp. v. Fiber Composites, LLC, 474 F.3d 1361, 1376-77 (Fed. Cir. 2007). However, in Anderson evidence *was* submitted concerning an "inherent upper limit": "Mr. Deaner testified that a person of skill in the art *would* recognize that the upper limit of the Young's modulus of the structural member would lie somewhere between the Young's modulus of the wood fiber and that of the polymer used in the composition." 474 F.3d at 1377 (emphasis added).[3]

Here, by contrast, while suggesting that "[a] skilled artisan *may* looking at the full scope of the claim arrive on a practical upper limit", Steuben's counsel concedes that "I don't

---

[3]     Steuben's reliance upon Milwaukee Electric Tool Corp. v. Snap-On Inc., 271 F. Supp. 3d 990 (E.D. Wis. 2017) is likewise misplaced. In that case, the court concluded that "[t]he skilled artisan would understand that the nature of the cells would create a natural upper limit to the potential discharge current, and so disclaiming an infinite discharge current would have been unnecessary". Id. at 1039.

know that they would. It depends on the evidence that defendants would put in". [591], pp. 31-32 (emphasis added). However, the deadline for submitting evidence bearing on claim construction has long since passed.

Defendants' experts unanimously conclude that "[a] person of ordinary skill in the art would understand from the . . .  claim language that the rate requirements have no upper limit. In other words, a system processing *any number* of bottles greater than 100 would satisfy the rate requirements of the '013 patent and '188 patent claims . . . . The claims have no implicit upper rate limit". *See* Declaration of Dennis R. Heldman, Ph.D. [426-73], ¶129; Declaration of Keith A. Ito [426-71], ¶94; Declaration of Bruce A. Cords, Ph.D. [426-72], ¶¶89-90.

Steuben suggests that "to the extent there is an inherent upper limit, it's [b]ounded only by something like building size . . . . [I]f defendants want to take the position that this covers thousands of bottles per minute, you could . . . put these machines in series and you could meet the limitation going up to a high number of bottles per minute. It's not limited to a single machine. It's a method." [591], p. 18.[4] "[D]o they enable a million bottles per minute? . . . . [I]t's a method claim . . . with unbounded building size, you could daisy chain these machines together". Id., pp. 30-31. However, nothing in the patent claims or specifications mentions even mentions (much less limits) building size - in fact, nothing limits the "method" to machines located in a single building. Under Steuben's approach, there could be multiple machines in multiple buildings.

When asked whether he would understand a similar phrase ("at least 100 containers per minute") to have no upper limit, Steuben's expert, Andre Sharon, Ph. D., testified

---

[4]    All of the claims containing the language at issue are method claims except claim 40 of the '388 patent, which is directed to "a device". [426-3], col. 16. However, that claim likewise offers no upper rate parameters.

that "if I have all the resources in the world, and all the space, I can build this theoretical . . .

giant machine that can make many, many, many bottles per minute . . . . It's not like you can go

to infinity because you'll never reach infinity. But from - so theoretically, you know, the upper

bound[ary] is very, very high. The - from a practical matter, that is another issue, how much

space do you have, and things like that . . . . I cannot give you an upper number. I mean, it can be

a large number. I mean, if we're talking theoretically. You know, if we're talking in a factory

and a certain, you know, floor space, then there's practical limits. I don't see any limits given

here in the patents. I couldn't give you an upper limit . . . [T]hat's my answer". 13-cv-892, [292-

3], pp. 362-64.

Steuben asks the court to "reject Defendants' attempt to rewrite the claim terms

by improperly adding limitations that are not included in the claim language", arguing that "if we

once begin to include elements not mentioned in the claim, in order to limit such claim . . . we

should never know where to stop". Steuben's Opening Markman Submission [417], pp. 63, 64

(*quoting* Phillips, 415 F. 3d at 1312 and McCarty v. Lehigh Valley R.R. Co., 160 U.S. 110, 116

(1895)). However, as GEA points out, "Steuben is the party trying to impose some yet-to-be-

revealed upper limit on claim terms that plainly have none". GEA's Markman Submission [427],

p. 36.

Steuben's attempt comes too late. "Courts can neither broaden nor narrow the

claims to give the patentee something different than what he has set forth." E.I. du Pont de

Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1433 (Fed. Cir. 1988). "[T]he patent

drafter is in the best position to resolve the ambiguity in patent claims" (Nautilus, 572 U.S. at

910): "the place to do so is in the specification of the inventor's application, and the time to do so

is prior to . . . its issuance as a United States patent". <u>Lear Siegler, Inc. v. Aeroquip Corp.</u>, 733 F.2d 881, 889 (Fed. Cir. 1984).

Therefore, I agree with defendants GEA, Nestle᷄ and Jasper that there is neither an express nor implicit upper limit to the phrase "at a rate greater than 100 bottles per minute". While Steuben dismisses Shibuya/Hood's proposed construction ("at a rate ranging from 100 bottles per minute to infinite bottles per minute") as both "far-fetched" and "absurd" (Steuben's <u>Markman</u> Brief in Reply (10-cv-781 [333]), p. 19), it is neither. The word "infinite" means "extending indefinitely" (<u>Webster's Third New International Dictionary (Unabridged)</u>), which does not necessarily mean "extending forever". <u>Webster's</u> also defines "infinite" to mean "indefinite in number" - and in that sense, use of the word "infinite" is quite appropriate.

## CONCLUSION

"The duty of the trial judge is to determine the meaning of the claims at issue . . . . In the exercise of that duty, the trial judge has an independent obligation to determine the meaning of the claims", <u>Exxon Chemical Patents, Inc. v. Lubrizol Corp.</u>, 64 F.3d 1553, 1555 (Fed. Cir. 1995), and is "not bound by the arguments of the parties". <u>Marine Polymer Technologies, Inc. v. HemCon, Inc.</u>, 672 F.3d 1350, 1359, n. 4 (Fed. Cir. 2012).

Whether or not there might be a theoretical upper limit to the phrase "at a rate greater than 100 bottles per minute", for purposes of claim construction that limit cannot be defined. Therefore, I recommend that the court construe the phrase "at a rate greater than 100 bottles per minute", as used in claims 1 and 18-20 of U.S. Patent No. 6,945,013  and claims 19 and 40 of U.S. Patent No. 6,536,188, to mean "at a rate ranging from greater than 100 bottles per minute to an infinite (that is, indefinite) number of bottles per minute".

The deadline for filing objections to this Report and Recommendation will be held in abeyance pending further order of the court.

Dated: February 11, 2020

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge