**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**STEUBEN FOODS, INC.,**

**Plaintiff,**

v.

**OYSTAR GROUP ET AL.,**

**Defendants.**

---

**REPORT AND RECOMMENDATION**
**REGARDING CONSTRUCTION OF**
**THE PHRASE "ASEPTICALLY**
**DISINFECTING"**

**1:10-cv-00780-EAW-JJM**
**1:12-cv-00904-EAW-JJM**
**1:13-cv-00892-EAW-JJM**
**1:13-cv-01118-EAW-JJM**

Familiarity with the background of these patent infringement actions (and with

the court's abbreviation of party names) is presumed. "The inventions described in Steuben's

patents-in-suit provide an aseptic packaging system for processing bottles at a high output

processing speed, and which can meet the stringent United States FDA [Food and Drug

Administration] aseptic standards." Steuben's Opening Markman Submission [417], p. 5.[1]

Presented for construction is the phrase "aseptically disinfecting", which appears

in several claims of the patents in suit. On January 31, 2018 I held a Markman hearing addressed

solely to the meaning of that phrase [485]. Since that time, my views on the topic "have

continued to evolve" (October 1, 2019 Report and Recommendation [536], p. 2), which has no

doubt been the source of considerable frustration for the parties. For that, I apologize. However,

as Justice Frankfurter once said, "[w]isdom too often never comes, and so one ought not to reject

---

[1]    Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). Unless otherwise indicated,
bracketed references are to CM/ECF docket entries in 12-cv-904. Many of the documents referred to in
this opinion have been filed in all of the Steuben cases, under different docket numbers.

it merely because it comes late". <u>Henslee v. Union Planters National Bank and Trust Co.</u>, 335

U.S. 595, 600 (1949). *See also* <u>In re Papst Licensing Digital Camera Patent Litigation</u>, 778 F.3d

1255, 1261 (Fed. Cir. 2015) ("a district court may (and sometimes must) revisit, alter, or

supplement its claim constructions . . . to the extent necessary to ensure that final constructions

serve their purpose of genuinely clarifying the scope of claims for the finder of fact").


## DISCUSSION

The "meaning of a claim term is the meaning that the term would have to a person

of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing

date of the patent application." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

I initially believed that the sterilant used for "aseptically disinfecting" must be

FDA "approved" rather than "approvable" as of the February 2, 1999 effective filing date, since

that was the language used in the specification. February 13, 2018 Rule 56(f)(3) Notice [486],

pp. 2-3 and n. 2.[2] However, I later came to the view that the sterilant must be FDA "approvable"

rather than "approved" as of February 2, 1999, since there was otherwise no way to account for

the fact that claim 40 of U.S. Patent No. 6,536,188 (the '188 patent) [426-3] expressly listed

"peroxyacetic acid and hydrogen peroxide" (commonly known as oxonia) as the sterilant, and it

was undisputed that oxonia was not an FDA approved sterilant as of the February 2, 1999

effective filing date. *See* April 20, 2018 Decision and Order [501].

However, in doing so I overlooked the fact that because claim 40 of the '188

patent was issued on reexamination, its issuance cannot affect the construction of "aseptically

disinfecting" in the earlier issued patent claims. *See* <u>Total Containment, Inc. v. Environ Products,</u>

---

[2]    In the interest of time and space, the contents of my prior decisions relating to "aseptically disinfecting" are incorporated herein by reference.

Inc., 921 F. Supp. 1355, 1385-86 (E.D. Pa. 1995), aff'd in relevant part, 106 F.3d 427 (Fed. Cir. 1997) ("terms used in the original claims must be construed without reference to claims added during reexamination"). Construing "aseptically disinfecting" *without* reference to claim 40, several factors cause me to return to my original view that the phrase requires the use of a sterilant that had already been approved by the FDA as of the effective filing date (February 2, 1999).

In the first place, "arguments made during prosecution shed light on what the applicant meant by its various terms." Springs Window Fashions LP v. Novo Industries, L.P., 323 F.3d 989, 995 (Fed. Cir. 2003). In proceedings before the Patent and Trademark Office, Steuben repeatedly asserted that the invention required the use of an FDA *approved* sterilant: "in order to meet the FDA definition of 'aseptic' the aseptic filler must, *inter alia*, use an FDA approved sterilant" (Steuben's Appeal Brief [417-18], p. 12); "the specification makes clear that the methods of the invention are FDA compliant. The Background section explains that '[f]or the aseptic packaging of food products, an aseptic filler must, for example, use an FDA (Food and Drug Administration) approved sterilant'". Steuben's Response [426-30], p. 32.

In fact, Steuben expressly disclaimed the use of a sterilant which had not been approved by the FDA as of the effective filing date: "At the time the application that matured into the '013 patent was filed, the only FDA approved sterilant for use in low acid packaging was hydrogen peroxide, as such chlorine *could not have been used* in aseptic packaging system as claimed by the '013 patent." Steuben's Reexamination Appeal Brief [426-11], p. 31 (emphasis added). "A patentee cannot make representations about claim language during prosecution to avoid prior art and then escape these representations when trying to show infringement." Wi-LAN USA, Inc. v. Apple Inc., 830 F.3d 1374, 1390 (Fed. Cir. 2016).

-3-

Secondly, testimony of those skilled in the art supports that conclusion. "In view of Steuben's patents and how the term 'FDA-approved sterilant' was used during the prosecution of the Patents-at-issue, a POSITA would have understood the term to mean a sterilant that was approved by the FDA for use to sterilize food packaging for low-acid aseptic foodstuffs." Expert Report and Declaration of Dr. Kevin M. Keener (12-cv-904) [427-8], ¶27. "[I]t is my opinion that a POSITA would have understood that hydrogen peroxide was the *only* FDA approved chemical sterilant for low-acid aseptic food packaging on the Effective Filing dates. Steuben recognized this during prosecution of the Patents-at-issue." Id., ¶29. "In 1999, and even into the mid-2000s, there was no regulatory mechanism to seek . . . acceptance by the FDA[ ] of a new commercial sterilant, such as POAA/oxonia, for use as a food-packaging sterilant in an aseptic process . . . . Thus, on February 2, 1999, the POSITA would not have thought it possible for POAA/oxonia, or any other sterilant (e.g., chlorine), to meet the FDA's standards for aseptic processing." Declaration of Bruce A. Cords Ph.D. [426-72], ¶40.

Finally, although "validity analysis is [not] a regular component of claim construction", Phillips, 415 F.3d at 1327, "[c]laim construction should not . . . be blind to validity issues: claims should be so construed, if possible, as to sustain their validity". MBO Laboratories, Inc. v. Becton, Dickinson & Co., 474 F.3d 1323, 1332 (Fed. Cir. 2007). In order to be valid, a patent must demonstrate "utility" - *see* 35 U.S.C. §101 ("[w]hoever invents or discovers any new *and useful* process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor") (emphasis added). Utility "is determined as of the application filing date" (In re Brana, 51 F.3d 1560, 1567, n. 19 (Fed. Cir.

1995)), and requires that the invention provide a "specific benefit" to the public in its "currently available form". Brenner v. Manson, 383 U.S. 519, 534-35 (1966).

"In other words, one skilled in the art must be able to use a claimed discovery in a manner which provides some *immediate benefit to the public* . . . . [A]n application must show that an invention is useful to the public as disclosed in its current form, not that it may prove useful at some future date." In re Fisher, 421 F.3d 1365, 1371 (Fed. Cir. 2005) (emphasis in original). Only a sterilant which had already been approved by the FDA could provide an "immediate benefit to the public". While Steuben suggests that as of the filing date, oxonia would be an approved sterilant "in the future" ([485], p. 48), it told the PTO that "skilled artisans understood at the time of filing that Oxonia was unlikely to achieve FDA-levels of aseptic" (Steuben's Response [427-22], p. 32), and that "as of 1999 there would have been no chance that the FDA would accept an oxonia-based system". Steuben's Reply [426-10], p. 5.

"[T]he meaning which the inventor gives to his words cannot be made to depend upon subsequent events, but should appear when the application is filed." Quantum Corp. v. Rodime PLC, 851 F. Supp. 1382, 1385 (D. Minn. 1994), aff'd, 65 F.3d 1577 (Fed. Cir. 1995). Thus, "[w]hen a claim term understood to have a narrow meaning when the application is filed later acquires a broader definition, the literal scope of the term is limited to what it was understood to mean at the time of filing". PC Connector Solutions LLC v. SmartDisk Corp., 406 F.3d 1359, 1363 (Fed. Cir. 2005)

While construing the phrase "aseptically disinfecting" to require a sterilant that was already approved as of the February 2, 1999 filing date is difficult to reconcile with the specification's express mention of oxonia as a possible sterilant,[3] "[a]lthough reluctant to exclude

---

[3]    *See*, *e.g.*, U.S. Patent No. 6, 495,013 (the '013 patent) [1-1], col. 4, l. 50-52 ("[t]he present invention uses an aseptic sterilant such as hydrogen peroxide . . . or oxonia to sterilize the bottles").

an embodiment . . . [courts] must not allow the disclosed embodiment to outweigh the language of the claim, especially when the court's construction is supported by the intrinsic evidence." Rolls-Royce, PLC v. United Technologies Corp., 603 F.3d 1325, 1334-35 (Fed. Cir. 2010).


## CONCLUSION

For all of these reasons, I recommend that the court construe the phrase "aseptically disinfecting" to require the use of a sterilant which had been approved by the FDA as of February 2, 1999 - namely, hydrogen peroxide.[4] Since claim 40 of the '188 patent defines oxonia as the sterilant, this construction, if adopted, will likely lead to that claim being declared invalid.[5] However, that is a question for another day

"[W]e need only construe terms that are in controversy, and only to the extent necessary to resolve the controversy." Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co. Ltd., 868 F.3d 1013, 1017 (Fed. Cir. 2017); Vivid Technologies, Inc. v. American Science & Engineering, Inc., 200 F.3d 795, 803 (Fed. Cir. 1999). Therefore, at the conference scheduled for March 11, 2020 the parties should be prepared to address, if necessary, any additional proposed construction of the phrase "aseptically disinfecting", and to set a timetable for necessary construction of other claims. The deadline for filing objections to this Report and Recommendation will be held in abeyance pending further order of the court.

---

[4]    "A skilled artisan would . . . have been aware that hydrogen peroxide was the only FDA approved sterilant at the time of filing." Steuben's  Response [426-30], p. 41.

[5]    See Virtual Solutions, LLC v. Microsoft Corp., 925 F. Supp. 2d 550, 569-70 (S.D.N.Y.), aff'd, 540 Fed. App'x 997 (Fed. Cir. 2013) ("claim 1 requires that two apparently contradictory statements hold true . . . . I therefore hold that claim 1 and all of its dependent claims are invalid"); Process Control Corp. v. HydReclaim Corp., 190 F.3d 1350, 1357 (Fed. Cir. 1999) ("where . . . claims are susceptible to only one reasonable interpretation and that interpretation results in a nonsensical construction of the claim as a whole, the claim must be invalidated").

Dated: February 24, 2020

JEREMIAH J. MCCARTHY
United States Magistrate Judge